FILED
United States Court of Appeals
Tenth Circuit

September 1, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MICHAEL DEAN SPAULDING,

        Defendant - Appellant.

No. 13-1376

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:12-CR-00223-JLK-3)**

---

Anthony Viorst, The Viorst Law Offices, P.C., Denver, Colorado, for Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (John F. Walsh, United States Attorney, and Stephanie N. Gaddy, Special Assistant United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff-Appellee.

---

Before **GORSUCH**, **SENTELLE**,[*] and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

[*]The Honorable David B. Sentelle, Senior Judge, U.S. Court of Appeals, District of Columbia Circuit, sitting by designation.

# I. INTRODUCTION

This case presents a significant jurisdictional question: Does 18 U.S.C. § 3231, which grants district courts original jurisdiction over federal criminal cases, allow a district court, absent government objection, to set aside a criminal judgment that contains a term of imprisonment at any time and for any reason? Or, instead, is a district court empowered to set aside such a judgment only in the situations listed in 18 U.S.C. § 3582(c)? This court concludes § 3231 does not, standing alone, confer upon a district court jurisdiction to set aside a previously imposed criminal judgment that contains a term of imprisonment. Instead, district courts have jurisdiction to alter such criminal judgments only to the extent "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B).

Because it did not act pursuant to statutory authority or Federal Rule of Criminal Procedure 35, the district court acted without jurisdiction when it vacated Michael Spaulding's original judgment of conviction. Accordingly, all of the actions and proceedings taken in this case after that point are void. The matter is, therefore, remanded to the district court to (1) vacate the judgment it entered on August 27, 2013, and (2) reenter the judgment imposed on December 6, 2012.

## II. BACKGROUND

### A. Factual Background

In May 2011, Mark Feltz, an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, learned that A.J. Aldridge was willing to sell methamphetamine and firearms. Feltz arranged to purchase a gun and one ounce of methamphetamine. On May 18th, Feltz met with Aldridge and Aldridge's supplier, Robert Blankenship. Although Blankenship was concerned Feltz was an undercover officer, a methamphetamine transaction was consummated. Blankenship declined to sell Feltz a gun.

A short time later, Feltz contacted Blankenship and arranged to pay $2800 for two ounces of methamphetamine. They agreed to complete the transaction at a liquor store in Englewood, Colorado. Blankenship indicated he would send a relative to deliver the methamphetamine. After Feltz arrived at the liquor store, Michael Spaulding pulled into the parking lot in a GMC truck. Feltz entered the truck and completed the transaction. Spaulding was subsequently arrested and charged, along with Aldridge and Blankenship, with conspiracy to distribute methamphetamine and distribution of methamphetamine.

### B. Procedural Background

#### 1. The Original Judgment—Entered December 6, 2012

Spaulding and the government entered into a plea agreement. Spaulding agreed to plead guilty to distributing methamphetamine and to cooperate with the

government in investigating and prosecuting crimes committed by him and his co-defendants. In exchange for his guilty plea and cooperation, the government agreed to (1) recommend a three-level decrease to Spaulding's offense level for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, and (2) move for a downward departure for substantial assistance, *see id.* § 5K1.1. With these sentencing recommendations, Spaulding's advisory sentencing range would be seventy-seven to ninety-six months' imprisonment.

Spaulding appeared before the district court on September 11, 2012, and pleaded guilty. The district court accepted the plea, ordered the production of a presentence report ("PSR"), and set the matter for sentencing. The PSR, which included the government's requested three-level downward adjustment to Spaulding's offense level for acceptance of responsibility, computed Spaulding's advisory guidelines range as 110 to 137 months' imprisonment. Spaulding moved for a downward variance and the government moved for a downward departure for substantial assistance.

At the sentencing hearing on December 6, 2012, the district court denied Spaulding a downward adjustment for acceptance of responsibility[1] and

---

[1]Spaulding asserts this decision is erroneous. In denying the adjustment, the district court stated a defendant must show he has done something more than "entered a plea of guilty and permitted the Government to avoid preparing for trial." R. Vol. 3 at 38; *see id.* at 40 ("[The adjustment] requires some kind of steps to deal with the victims and what they have done. It requires, in many instances in drug cases, that there's a demonstration of the time during the period

(continued...)

Spaulding's motion for a downward variance. It nominally granted the

government's motion for a § 5K1.1 downward departure. Rather than imposing a

sentence in the seventy-seven to ninety-six month range recommended by the

government, however, the district court imposed a sentence of 137 months, the

top of the advisory guidelines range set out in the PSR.[2] When the government

asked the district court to reconcile its grant of the § 5K1.1 motion with a

[1](...continued)
of confinement that substantial and significant steps have been made to take a cure."). Spaulding entered into early plea negotiations and fully cooperated with the investigation of his criminal conduct. *See* U.S.S.G. § 3E1.1 cmt. n.3 ("Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility."). Nothing in the record casts doubt on the government's assertion that Spaulding "assisted authorities in the prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently." R. Vol. 1 at 65 (government motion regarding acceptance of responsibility); *see also* U.S.S.G. § 3E1.1 cmt. n.6 (providing that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under [§ 3E1.1(b)] may only be granted upon a formal motion by the Government at the time of sentencing"). Spaulding claims, however, that this error is moot given the district court's decision to set aside the original judgment of conviction and allow him to withdraw his guilty plea. Nevertheless, as explained below, the district court lacked jurisdiction to set aside the original judgment and, thus, the issue is not moot. After the district court complies with this court's mandate on remand and reimposes the original judgment, Spaulding can challenge the validity of the original sentence in a new direct appeal.

[2]The district court did not explain how this sentence, which was tied to the advisory guidelines range set out in the PSR (a range calculated by including an adjustment for acceptance of responsibility), was consistent with its earlier denial of the government's request for a downward adjustment to Spaulding's offense level for acceptance of responsibility.

sentence at the top of the pre-departure advisory sentencing range, the district court stated it had accepted the motion, but was "not following [the government's] recommendation." R. Vol. 3 at 52. In support of its chosen sentence, the district court cited Spaulding's lengthy criminal history.[3]

The day after sentence was imposed, Spaulding filed a motion titled "Motion to Correct Sentence Pursuant to Federal Rule of Criminal Procedure 35(a), or in the Alternative to Permit Defendant to Withdraw Plea Pursuant to Federal Rule of Criminal Procedure 11(d)." He asserted the district court clearly erred in sentencing him without taking into account his acceptance of responsibility and substantial assistance to the government. Accordingly, Spaulding argued, the district court should exercise its discretion under Rule 35(a) to correct his sentence and impose a sentence of no more than ninety-six months' imprisonment. Alternatively, Spaulding requested that the district court

---

[3]Both parties assert the district court's actions are procedurally irregular. Although it granted the government's request for a downward departure, the district court gave no indication of how it valued Spaulding's assistance. *See* U.S.S.G. § 5K1.1(a) (setting out factors a district court may consider in making the "appropriate reduction" to a sentencing range). Then, in imposing sentence, the district court simply stated it was "going to follow the guidelines" because it had found "no reason to depart from the guideline range." This court's precedents make clear that in "calculating the proper Guideline range, the district court is . . . required to consider and apply the departure provisions in appropriate cases." *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007). Despite granting the government's motion, the district court never applied the substantial-assistance departure provisions. Thus, the district court never calculated and never considered an appropriate advisory guidelines range. As is the case with the issue identified above, *see supra* n.1, Spaulding will be free to raise this issue in a new direct appeal after the district court reimposes the original judgment.

permit him to "withdraw his plea, *nunc pro tunc* to December 6, 2012." He asserted such relief was authorized by Federal Rule of Criminal Procedure 11(d)(2)(b), which states a criminal defendant may withdraw his plea prior to the imposition of sentence for any "fair and just reason." Spaulding argued that if the district court,

> prior to the imposition of sentence, had denied the Government's motion for a downward departure (thereby apprising him of its intention to impose a higher sentence than the one requested by the Government), he immediately would have sought leave to withdraw his prior guilty plea, and that the higher sentence would have constituted a 'fair and just reason' for the plea withdrawal.

*But see* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."); *United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991) (holding that a defendant's dissatisfaction with the length of his sentence is insufficient reason to allow withdrawal of a guilty plea).

Spaulding's motion informed the district court that the government "has no objection to granting Mr. Spaulding a three-level decrease in his sentencing-guideline computation, based upon Mr. Spaulding's acceptance of responsibility, but . . . otherwise objects to the relief requested herein." The next business day, without awaiting a response from the government, the district court entered an order denying Spaulding's request to correct his sentence pursuant to Federal

Rule of Criminal Procedure 35(a), but granting his request to be allowed to withdraw his guilty plea.  The case was reset for a jury trial.

## 2.  The Judgment on Appeal—Entered August 27, 2013

On March 8, 2013, Spaulding filed a "Notice of Disposition."  In accord with that proposed disposition, the parties appeared for a change of plea hearing and submitted plea paperwork to the district court.  Under the new plea deal, Spaulding agreed to plead guilty to a superceding information charging him with two counts of unlawfully using a communications facility in the commission of a drug transaction, in violation of 21 U.S.C. § 843.  In exchange the government agreed to dismiss the pending indictment.  The maximum sentence allowed for a § 843 conviction is four years, for a potential total of eight years' imprisonment if the sentences on the two counts were ordered to run consecutively.  The plea agreement was not, however, conditioned on the district court imposing any particular sentence.

At the hearing, the government claimed the proposed plea was appropriate because Spaulding was similarly situated to Aldridge, who had received a sentence of 60 months' imprisonment.  The government further stated that, in contrast with Aldridge, Spaulding met with the government for a full debriefing regarding this case.  During that debriefing, Spaulding indicated his "remorse and embarrassment for engaging in the conduct that got him to this point."  Regarding Spaulding's cooperation, the government stated:

He was prepared to testify in this case. He didn't have to. He also provided information about other drug traffickers. He didn't have to do that. And all of that was a benefit to the Government. And the [upper-guideline-range sentence] the Court [initially imposed] was not consistent with the 5K departures of other defendants in this district. . . . [I]t's not in the same ballpark, and wasn't a full acknowledgment of the risk the defendant took, and that's really what's behind this [revised plea agreement]. Is to figure out a sentence that may be appropriate, without giving him an unnecessarily heavy sentence.

The district court expressed its belief that, pursuant to *United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985), it possessed discretion to accept or reject any plea bargain reached between the parties. Spaulding argued that pursuant to *United States v. Robertson*, 45 F.3d 1423 (10th Cir. 1995), the proposed plea was a charge bargain and only the government was authorized to make charging decisions. The district court decided the proposed plea was a "hybrid agreement" because the government was attempting, through a charging decision, to limit the court's discretion at sentencing to a maximum term of ninety-six months' imprisonment. Concluding it was not in the public interest because it was too lenient, the district court rejected the proposed plea agreement.

On May 22, 2013, Spaulding filed another "Notice of Disposition." At the change of plea hearing on this motion, the parties informed the district court that the purpose of the new agreement was to permit Spaulding to enter a conditional guilty plea, which would allow him to lodge an appeal of the rejection of the second proposed plea agreement. The district court refused to allow Spaulding to

enter a conditional guilty plea, asserting this particular case was an example of "the evils and incompetencies of the plea-bargaining process"[4] and that a conditional plea was unnecessary as Spaulding could raise the issue on appeal after a trial on the merits.

At Spaulding's request, the matter was set for a bench trial. Although not required to testify, Spaulding took the witness stand at trial and confessed his limited involvement in the conspiracy by acting as a drug courier. At the conclusion of the bench trial, the district court found Spaulding guilty of the two drug counts set out in the indictment.

A United States Probation Officer prepared a revised PSR. The revised PSR calculated a total offense level of twenty-eight[5] and a criminal history category of VI, resulting in an advisory guidelines range of 140-175 months'

---

[4]The record demonstrates an overt hostility on the part of the district court judge to the plea-bargaining process. *Cf. United States v. Vanderwerff*, 788 F.3d 1266, 1276 (10th Cir. 2015) (noting same district court judge's "negative frame of mind toward the plea-bargaining process seems to have detrimentally influenced" his decision to reject a guilty plea because the plea contained a waiver of appellate rights). Because this court concludes the district court did not have jurisdiction to set aside the original judgment in this case, it is unnecessary to address the propriety of the district court's rejection of the plea agreement reached by the parties in March 2013. Nevertheless, it is once again worth noting for the benefit of the district court judge that "plea bargaining has been consistently endorsed by the courts and recognized as serving a critical role in the administration of our criminal justice system." *Id.* at 1279.

[5]The PSR recognized the government would file a motion recommending that Spaulding receive a three-point reduction in his offense level for acceptance of responsibility. Such an adjustment was not included in the revised PSR, however, because Spaulding had taken the case to trial.

imprisonment. The PSR acknowledged that Spaulding had cooperated with the government and, based upon his substantial assistance, the government intended to recommend a sentence range of seventy-seven to ninety-six months' imprisonment. Finally, the PSR noted that Aldridge had received a sixty-month prison sentence.

Prior to sentencing, the government moved for a three-point downward adjustment to Spaulding's offense level for acceptance of responsibility and a downward departure based upon Spaulding's substantial assistance. Spaulding moved for a downward variance from the advisory guidelines range. At the beginning of the sentencing hearing, the district court granted the government's motions.[6] It acknowledged Spaulding had moved for a downward variance from the guidelines range, but did not rule on that motion. In any event, the district court explicitly stated it was "not going to follow the sentencing guidelines." This was due, according to the district court, to Spaulding's lengthy criminal record. Spaulding (1) emphasized his minor role in the case, as compared to the roles played by Aldridge and Blankenship; (2) asserted his criminal record was comparable to Aldridge's record and, therefore, the district court should impose a sentence comparable to Aldridge's sixty-month prison sentence; (3) claimed his prior criminal convictions consisted mostly of driving and non-violent property

[6]The district court's grant of the motion to adjust Spaulding's offense level downward for acceptance of responsibility resulted in an advisory guidelines range of 110-137 months' imprisonment. *See* U.S.S.G. Sentencing Table.

-11-

offenses; and (4) asked the district court to consider that he had provided substantial assistance to the government by sitting for a debriefing and revealing everything he knew about this case and others. The government reiterated its view that Aldridge and Spaulding had comparable criminal records and that Aldridge had a more significant role in this case.

The district court concluded Spaulding's criminal history was more egregious than Aldridge's and rejected the parties' joint request that the co-defendants receive comparable sentences. It also refused to give any credence to the government's evaluation of the case, stating it was "rejecting the government's analysis of this case in its entirety." The district court sentenced Spaulding to a term of imprisonment of 137 months on each count, to be served concurrently. Prior to adjournment, the government noted the sentence was at the high end of the advisory guidelines range and inquired if the court had "give[n] the defendant consideration under the government's 5K motion." The district court responded that it had given consideration to the government's motion, but that it was "not using the guidelines."[7]

_____

[7]The district court's actions in this regard—refusing to calculate and, thus, refusing to consider the advisory guidelines range—amount to a procedural sentencing error identical to the error allegedly committed at the sentencing proceeding on December 6, 2012. *See supra* n. 3. In light of our conclusion that all of the district court's actions following the entry of judgment on December 6, 2012, are void, this error on the part of the district court is moot.

## III. DISCUSSION

### A. Introduction

Spaulding filed the instant appeal contending the district court erred in: (1) rejecting the second plea agreement he entered into with the government, which agreement would have dismissed the charges set out in the indictment and allowed Spaulding to plead guilty to two counts of using a communication facility in the commission of a drug transaction; and (2) refusing to consider the sentencing guidelines in fashioning an appropriate sentence. In response, the government asserts the second proposed plea agreement "would have resulted in a just sentence under the circumstances of this case." Nevertheless, it asserts the district court acted within the bounds of its discretion when it rejected that plea agreement. The government concedes the sentence imposed by the district court is procedurally unreasonable.

After oral argument, this court noted a potential jurisdictional defect and issued the following order to show cause:

> The district court accepted Spaulding's original plea agreement on September 11, 2012, and set the matter for sentencing. The district court held a sentencing hearing on December 6, 2012, and imposed a sentence of 137 months' imprisonment. On December 7, 2012, Spaulding filed a motion for relief. The motion asked the district court to correct substantive errors it made in arriving at Spaulding's sentence under Fed. R. Crim. P. 35(a). In the alternative, the motion asked the district court to allow Spaulding to withdraw his guilty plea pursuant to the terms of Fed. R. Crim. P. 11(d). On December 10, 2012, before the government had a chance to respond to Spaulding's motion, the district court (1) denied the

-13-

Rule 35(a) motion to correct sentence and (2) granted Spaulding's motion to withdraw his guilty plea. This case then proceeded through a further failed plea agreement and an eventual trial. On appeal, Spaulding challenges orders entered by the district court after he was allowed to withdraw his guilty plea on December 10, 2012.

. . . . Rule 11(e) specifically provides: "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal." Numerous courts have held the prohibition set out in Rule 11(e) (as well as earlier versions of the rule) is jurisdictional. *See, e.g.*, *United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995); *United States v. Ruiz-del Valle*, 8 F.3d 98, 102 (1st Cir. 1993); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993); *United States v. Baker*, 790 F.2d 1437, 1438 (9th Cir. 1986). This court has so indicated in unpublished dispositions. *United States v. Rayford*, 552 F. App'x 856, 859 (10th Cir. 2014); *United States v. Scott*, 17 F. App'x 784, 785 (10th Cir. 2001). The committee notes accompanying the amendments to Fed. R. Crim. P. 32(d) in 1985 (the original predecessor to the current Rule 11(e)) further support the notion a district court completely lacks power under the Rules of Criminal Procedure to allow a defendant to withdraw a guilty plea after sentencing.

The parties are ordered to brief the following three questions: (1) Did the district court lack jurisdiction to allow Spaulding to withdraw his guilty plea after sentence was imposed on December 6, 2012? (2) If the district court lacked jurisdiction to allow Spaulding to withdraw his guilty plea, are all the actions taken by the district court after December 6th null and void? (3) If the answer to the first two questions is "yes," how should this court proceed with this case?

Order of March 18, 2015.

The government responded to the show cause order by arguing the rule set

out in Federal Rule of Criminal Procedure 11(e) is jurisdictional. It recognized

that the provisions of the various versions of the Federal Rules (e.g., Federal

Rules of Civil Procedure, Federal Rules of Criminal Procedure, Federal Rules of

-14-

Bankruptcy Procedure) do not necessarily implicate a court's subject matter jurisdiction. Gov't Supp. Brief at 4-5 (citing, inter alia, *Eberhart v. United States*, 546 U.S. 12, 16 (2005), and *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)). Nevertheless, the government asserts Rule 11(e) is jurisdictional because it "implements the statutory directive contained in 18 U.S.C. § 3582(c), which provides that a 'court may not modify a term of imprisonment once it has been imposed,' except under certain stated conditions." Gov't Supp. Brief at 6. Because the district court lacked jurisdiction to grant Spaulding's motion to withdraw his guilty plea after imposition of sentence, the government contends the district court's actions after that point were void. Thus, the government asserts, the proper course is to remand the matter to the district court to vacate the judgment it entered on August 27, 2013, and reinstate the judgment based upon the original December 6, 2012, sentence.

In his supplemental brief, Spaulding does not address whether the provisions of Rule 11(e) are jurisdictional. Instead he asserts Rule 11(e) is not implicated in this case. Spaulding notes his motion to withdraw the guilty plea underlying the December 6, 2012, judgment requested that the district court grant the motion *nunc pro tunc* to a time prior to imposition of sentence. By granting the motion to withdraw, Spaulding asserts the district court must have granted the relief requested, i.e., ordering the withdrawal of the guilty plea to be retroactive to a time before the imposition of sentence. Alternatively, he asserts his motion

-15-

to withdraw amounted to a collateral attack on his conviction and notes that Rule 11(e) does not apply to collateral attacks on a conviction or sentence. Spaulding concedes, however, that if the district court's order allowing him to withdraw his guilty plea implicated Rule 11(e), the district court lacked jurisdiction and all its subsequent actions were null and void. If that is the case, Spaulding asserts he should be allowed to file a new direct appeal challenging the validity of the judgment entered by the district court on December 6, 2012.

## B. Analysis

### 1. Rule 11(e) is Jurisdictional

Federal Rule of Criminal Procedure 11(e), which is titled "Finality of a Guilty or Nolo Contendere Plea," provides as follows: "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." The district court allowed Spaulding to withdraw the guilty plea underlying the district court's December 6, 2012, judgment *after imposition of sentence*.[8] Thus, the relevant

---

[8] The district court did not enter a written judgment memorializing the sentence it announced from the bench on December 6, 2012. This is of no moment, however, because the district court's oral imposition of sentence on December 6, 2012, operated as the final judgment in this case. *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987) (en banc) ("[T]he judgment in a federal criminal case is the sentence pronounced from the bench."); *see also United States v. Garduño*, 506 F.3d 1287, 1288-89 (10th Cir. 2007) (holding that the term "imposes sentence" as used in the relevant statutes and rules means the district court's oral announcement of sentence).

question in this case is whether Rule 11(e) is jurisdictional or, instead, a claim-processing rule.

Numerous courts have held that the prohibition set out in Rule 11(e) (as well as earlier versions of the rule) is jurisdictional. *See, e.g.*, *United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995); *United States v. Ruiz-del Valle*, 8 F.3d 98, 102 (1st Cir. 1993); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993); *United States v. Baker*, 790 F.2d 1437, 1438 (9th Cir. 1986). This court has so indicated in unpublished dispositions. *United States v. Rayford*, 552 F. App'x 856, 859 (10th Cir. 2014); *United States v. Scott*, 17 F. App'x 784, 785 (10th Cir. 2001). Most of these cases, however, were decided before the Supreme Court cautioned that federal courts should use the term "jurisdiction" only to describe "subject matter jurisdiction," not "emphatic time prescriptions in rules of court." *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (concluding Federal Rules of Bankruptcy Procedure 404(a) and (b) and 9006(b)(3) are nonjurisdictional claim-processing rules); *see also Eberhart v. United States*, 546 U.S. 12, 16 (2005) (holding that Federal Rules of Criminal Procedure 33 and 45 are nonjurisdictional claim-processing rules). *But see Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) (holding the time limit set out in Federal Rule of Appellate Procedure 4 is jurisdictional because it is based on a statutory time prescription).

The various provisions of the Federal Rules do not ordinarily implicate subject matter jurisdiction. *Kontrick*, 540 U.S. at 453. Instead, the critical

-17-

question is whether the limitation in the rule has been imposed by Congress.

"Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles*, 551 U.S. at 212-13. Even then, not all statutory restrictions on a federal court's authority are jurisdictional.[9] "To be jurisdictional, the restriction on the

---

[9]It is difficult to view as fully consistent with its own precedents the Supreme Court's recent insistence that only those procedural rules implementing a statutory directive can be jurisdictional in nature. For example, *Bank of Nova Scotia v. United States*, a decision that has never been overruled by the Court, holds as follows:

> We . . . hold that a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). Rule 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Rule was promulgated pursuant to 18 U.S.C. § 687 (1946 ed.) (currently codified, as amended, at 18 U.S.C. § 3771), which invested [the Supreme Court] with authority "to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict . . . ." Like its present-day successor, § 687 provided that after a Rule became effective "all laws in conflict therewith shall be of no further force and effect." It follows that Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions. The balance struck by the Rule between societal costs and the rights of the accused may not casually be overlooked because a court has elected to analyze the question under the supervisory power.

487 U.S. 250, 254-55 (1988) (quotation omitted); *see also In re Grand Jury Proceedings*, 616 F.3d 1186, 1197-98 (10th Cir. 2010) (holding that the Rules Enabling Act authorizes the Supreme Court to "prescribe rules that affect[] statutory-based jurisdictional time limits").

(continued...)

-18-

court's authority not only must be specified by Congress—it must also express a clear Congressional intent to be jurisdictional." *United States v. McGaughy*, 670 F.3d 1149, 1156 (10th Cir. 2012).[10] Although the relevant Supreme Court cases do "not provide a clean test for divining such intent," this court has concluded we must "look to a restriction's 'textual, contextual, and historical backdrop.'" *Id.* (quoting *Gonzalez v. Thaler*, 132 S. Ct. 641, 652 n.8 (2012)).

---

[9](...continued)

Perhaps the Supreme Court's case law in this arena could best be understood as somewhat cohesive by recognizing that the distinction between jurisdictional limitations and claim-processing rules examined in the *Eberhart-Kontrick-Bowles* line of cases is *not* fully descriptive of the range of possibilities for the various federal rules. That is, some rules of procedure, like those at issue in *Eberhart* and *Kontrick*, are directed toward the parties and, unless raised by the parties, are subject to waiver and forfeiture. Other rules, like the rule at issue in *Kontrick*, enforce a historic limitation on a federal court's jurisdiction. Finally, some rules, like the one at issue in *Bank of Nova Scotia* and the one at issue here, are directed squarely at a federal court's ability to access any inherent authority it otherwise might possess. In the words of *Bank of Nova Scotia*, these types of rules have struck a balance "between societal costs and the rights of the accused" that federal courts are not entitled to overlook. 487 U.S. at 255. For that reason, Federal Rule of Criminal Procedure 52(a) obligates a federal court to disregard errors that do "not affect substantial rights," even if the government does not insist on the application of such a rule. Likewise, Rule 11(e) prohibits a district court from allowing a defendant to withdraw a guilty plea post imposition of sentence, whether or not the government objects. These rules are, "in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [their] mandate than they do to disregard constitutional or statutory provisions." *Id.* Thus, even if the limitation set out in Rule 11(e) is not jurisdictional in the *Kontrick* sense—although, as set out more fully below, we conclude it is—we would still conclude it is not a claim-processing rule that a district court can ignore unless raised by a party.

[10]This court's decision in *United States v. McGaughy*, 670 F.3d 1149, 1155-58 (10th Cir. 2012), helpfully synthesizes the Supreme Court's complex *Eberhart-Kontrick-Bowles* line of cases.

-19-

Textually, a statutory restriction need not go so far as to use the magic word "jurisdiction," but must use clear jurisdictional language. Contextually, the placement of a restriction within a statute is important. If the restriction is connected to a grant of jurisdiction, then the restriction is likely meant to qualify that grant; but if the restriction is set off from the grant of jurisdiction, it may be non-jurisdictional. Historically, certain types of restrictions have long been held to be jurisdictional—the epitome of these are time restrictions for taking an appeal.

*Id.* (quotations and citations omitted).

The government argues convincingly that the provisions of Federal Rule of Criminal Procedure 11(e), together with the provisions of Federal Rule of Criminal Procedure 35, implement and complement the statutory directive contained in 18 U.S.C. § 3582(b) and (c). Section 3582(b) provides that a judgment of conviction that contains a sentence of imprisonment is final, "[n]otwithstanding the fact that a sentence to imprisonment can subsequently be" modified in certain circumstances.[11] Section 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed," except in a strictly limited set of circumstances.[12] Rule 35 allows a district court to "correct a

---

[11]Those circumstances are as follows: (1) a modification pursuant to the provisions of 18 U.S.C. § 3582(c), *see infra* n.12; (2) a correction pursuant to the terms of Federal Rule of Criminal Procedure 35; or (3) an appeal of the validity and propriety of a sentence pursuant to 18 U.S.C. § 3742.

[12]Those limited situations are as follows: (1) upon motion of the Director of the Bureau of Prisons; (2) to the extent permitted by Federal Rule of Criminal Procedure 35; (3) when a defendant's sentence is based upon a sentencing range that has been subsequently lowered by the United States Sentencing Commission; and (4) to the extent otherwise expressly permitted by statute, i.e., 28 U.S.C.

(continued...)

sentence that resulted from arithmetical, technical, or other clear error" within

fourteen days and to reduce a sentence, upon government motion, when a

defendant "provided substantial assistance in investigating or prosecuting another

person." Consistent with the finality rule set out in § 3582, the provisions of Rule

35 relating to post-judgment sentence corrections are "intended to be very narrow

and to extend only to those cases in which an obvious error or mistake has

occurred in the sentence." *McGaughy*, 670 F.3d at 1158. Rule 11(e) prevents the

circumvention of the limitations set out in § 3582 and Rule 35 by the mere

artifice of the setting aside of a guilty plea. That is, § 3582 and Rule 35 would

have little meaning in the context of criminal judgments based on guilty pleas if a

district court could evade the limitations of those provisions by the mere

expediency of allowing withdrawal of the post-sentence guilty plea.

Further demonstrating the complementary nature of these provisions, this

court notes that Rule 11(e), Rule 35, and § 3582(c) all focus on a sentence's oral

imposition, not on entry of a written judgment. Fed. R. Crim. P. 11(e) (providing

that a defendant cannot withdraw a guilty plea "[a]fter the court imposes[13]

sentence"); Fed. R. Crim. P. 35(c) ("As used in this rule, 'sentencing' means the

oral announcement of the sentence."); 18 U.S.C. § 3582(c) (providing a "court

---

[12](...continued)
§§ 2241 and 2255.

[13]*See supra* n.8 (noting the term "imposes sentence" means the district
court's oral announcement of a sentence).

may not modify a term of imprisonment once it has been imposed"). This linguistic relationship demonstrates that Rules 11(e) and 35 implement § 3582's statutory directive that a district court is, absent a few narrowly proscribed exceptions, precluded from altering an orally pronounced sentence.[14] Because Rule 11(e)'s limitation upon a court's power to vacate a guilty plea is tied directly to the statutory directive in § 3582(c), we move on to the textual, contextual, and historical analysis mandated by this court's decision in *McGaughy*.[15]

---

[14]Section 3582(c), Rule 35, and Rule 11(e) operate in this synergistic fashion even though Rule 35 and § 3582(c) focus on the finality of a sentence and Rule 11(e) focuses on the finality of an underlying guilty plea. We have not found any authority suggesting a hard-and-fast distinction in the federal criminal system between a sentence of imprisonment and the conviction upon which that sentence is based. After all, it is the orally pronounced sentence, rather than the underlying conviction, that operates as the judgment in a criminal case. *See supra* n.8. In that regard, we recognize that the statutory provision governing collateral attacks on federal criminal judgments focuses on the resulting sentence, not on the underlying conviction. *See* 28 U.S.C. § 2255(a) (providing that "a prisoner in custody under *sentence*" of a federal court "claiming the right to be released upon the ground that the *sentence* was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed *sentence* to vacate, set aside or correct *the sentence*" (emphasis added)).

[15]Even if this court were not convinced Rule 11(e) implements the statutory directive set out in § 3582(c), we would still hold that, quite independently of Rule 11(e), § 3582 acts as a jurisdictional limitation preventing a district court from altering a sentence through the process of setting aside a guilty plea. As set out more fully below, both the Supreme Court and this court have concluded district courts lack inherent power to modify a judgment of conviction containing a sentence of imprisonment. Furthermore, the Supreme Court has held that there exists a special need for finality with regard to guilty pleas. Finally, this court's decision in *McGaughy*, makes clear that the very purpose of § 3582(c) is to limit any inherent power of district courts to alter sentences.

This court has already determined, as a textual matter, that the relevant provisions of § 3582(c) "operate[] as a clear and mandatory restriction on a court's authority." *McGaughy*, 670 F.3d at 1158 (quotation omitted). Rule 11(e) likewise acts as a clear and mandatory restriction on the court's authority: "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea *may be set* aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e) (emphasis added). Taken together, the rule and the statute "suggest an intent to constrain a court's authority to act outside the prescribed time limits." *McGaughy*, 670 F.3d at 1158. This court has so concluded with respect to § 3582(c) and Federal Rule of Criminal Procedure 35 on occasions too numerous to fully catalog. *See, e.g.*, *United States v. Baker*, 769 F.3d 1196, 1198 (10th Cir. 2014) ("Like § 3582(c), Rule 35's requirements are jurisdictional."); *United States v. Graham*, 704 F.3d 1275, 1277 (10th Cir. 2013) ("Federal courts generally lack jurisdiction to modify a term of imprisonment once it has been imposed."); *United States v. Smartt*, 129 F.3d 539, 542 (10th Cir. 1997) (holding that because the defendant's motion for a sentence reduction did not fit within any of the allowable categories set out in § 3582(c), "[t]he district court therefore lacked jurisdiction"); *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996) ("A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.").

Context also supports the conclusion that the complementary provisions of Rule 11(e) and § 3582(c) are jurisdictional. "Statutes that speak clearly to the courts' statutory or constitutional power to adjudicate the case must of course be treated as jurisdictional and given their full effect, but statutes that speak to the rights or obligations of parties to a lawsuit establish claim-processing rules and should not be treated as jurisdictional prescriptions." *Barnes v. United States*, 776 F.3d 1134, 1146 (10th Cir. 2015) (quotations, citations, and alterations omitted). The overwhelming majority of the cases in the Supreme Court's *Eberhart-Kontrick-Bowles* line deal with limitations that explicitly recognize a court's power to afford relief, but obligate the parties to act to obtain that recognized relief within a specified time frame. *See, e.g.*, *Bowles*, 551 U.S. at 212-13 (holding the time limit set out in Federal Rule of Appellate Procedure 4 is jurisdictional because it is based on a statutory time proscription); *Eberhart*, 546 U.S. at 16 (holding that time limits set out in Federal Rules of Criminal Procedure 33 and 45 are nonjurisdictional claim-processing rules); *Kontrick*, 540 U.S. at 454 (concluding time limits set out in Federal Rules of Bankruptcy Procedure 404(a) and (b) and 9006(b)(3) are nonjurisdictional claim-processing rules). *But see* *Gonzalez*, 132 S. Ct. at 649-50 (holding that provisions of 28 U.S.C. § 2253(c)(3), which require that a certificate of appealability contain a statement of which specific issues make "a substantial showing of the denial of a constitutional right," is nonjurisdictional). The provisions of Rule 11(e) and § 3582(c), on the

other hand, are not at all directed to the parties. Instead, they specifically state that the court lacks power to take a particular action. Fed. R. Crim. P. 11(e) (providing that a "plea may be set aside only on direct appeal or collateral attack" "[a]fter the court imposes sentence"); 18 U.S.C. § 3582(c) (providing a "court may not modify a term of imprisonment once it has been imposed"); *see also Bank of Nova Scotia*, 487 U.S. at 254-56 (holding federal courts cannot exercise their supervisory authority to circumvent the requirements of Federal Rule of Criminal Procedure 52(a), which requires federal courts to "disregard[]" any error in criminal proceedings that does not affect a defendant's substantial rights).

In that same contextual vein, it is exceedingly difficult to conclude the limitation set out in Rule 11(e) is a claim-processing rule because there does not appear to be an avenue available for the government to vindicate such rule. "The government can take an interlocutory appeal only with specific statutory authority." *United States v. Schneider*, 594 F.3d 1219, 1223 (10th Cir. 2010) (quotation omitted). None of the provisions of 18 U.S.C. § 3731, the statute governing appeals by the United States in criminal cases, allow an interlocutory appeal by the government from an order of the district court granting a motion to withdraw a guilty plea.[16] *See* Fed. R. Crim. P. 32(d) advisory committee's note to

---

[16]18 U.S.C. § 3731 provides as follows:

      In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district

(continued...)

1983 amendments.[17]  Nor do the provisions of 18 U.S.C. § 3742(b),[18] the statutory

[16](...continued)
court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information . . . .

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

. . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

[17]As noted above, Rule 32(d) is the substantively identical predecessor to the current Rule 11(e).  In relevant part the committee notes provide as follows:

The change in Rule 32(d) . . . is at best a minor one in terms of how post-sentence motions to withdraw pleas will be decided.  It avoids the confusion which now obtains as to whether a §2255 petition must be assumed to also be a 32(d) motion and, if so, whether this bears significantly upon how the matter should be decided.  *See, e.g.*, *United States v. Watson*, [548 F.2d 1058 (D.C. Cir. 1977)].  *It also avoids the present undesirable situation in which the mere selection of one of two highly similar avenues of relief, rule 32(d) or §2255, may have significant procedural consequences, such as whether the government can take an appeal from the district court's adverse ruling (possible under §2255 only).*  Moreover,

(continued...)

provision allowing the government an appeal from certain types of sentencing

[17](...continued)
because §2255 and Rule 32(d) are properly characterized as the "two principal procedures for collateral attack of a federal plea conviction," Borman, The Hidden Right to Direct Appeal From a Federal Conviction, 64 Cornell L.Rev. 319, 327 (1979), this amendment is also in keeping with the proposition underlying the Supreme Court's decision in *United States v. Timmreck*, [441 U.S. 780 (1979)], namely, that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."

*See* Fed. R. Crim. P. 32(d) advisory committee's note to 1983 amendments (emphasis added).

[18]18 U.S.C. § 3742(b) provides as follows:

The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is less than the sentence specified in the applicable guideline range . . . ; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

The only provision of § 3742(b) that is even potentially applicable is § 3742(b)(1), allowing a government appeal from a sentence "imposed in violation of law." This court has not, however, found even a single case indicating that provision allows the government to appeal from a final sentence on the basis that the district court erroneously allowed a defendant to withdraw a previous guilty plea after imposition of sentence. Instead, consistent with the other subparts of § 3742(b), it appears § 3742(b)(1) is focused narrowly on the process utilized by the district court to arrive at an appropriate term of imprisonment.

-27-

decisions, provide an avenue to vindicate the limitations set out in Rule 11(e).

Thus, reading Rule 11(e) as a claim-processing rule would render the rule

nugatory.

Finally, a historical examination of the provisions at issue support the

conclusion they are jurisdictional. As to § 3582(c), this court has already

concluded the statute represents a recognition on the part of Congress of the

courts' historical "inherent power to correct clearly erroneous sentences."

*McGaughy*, 670 F.3d at 1158. Nevertheless, the terms of the statute make clear

that Congress intended to limit the exercise of that inherent power to a specified

time frame and a limited set of circumstances. *Id.* ("In Rule 35(a), which the

statute incorporates by reference, the time limitation and grant of authority are

contained within a single sentence: Within 14 days after sentencing, the court

may correct a sentence that resulted from . . . clear error. Thus, both Rule 35(a)

and the statute suggest an intent to constrain a court's authority to act outside the

prescribed time limits." (quotation and citation omitted)). This panel is, of

course, bound by *McGaughy*'s holding that § 3582(c) acts as a jurisdictional

limitation on the ability of district courts to alter previously imposed sentences of

imprisonment. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by

the precedent of prior panels absent en banc reconsideration or a superseding

contrary decision by the Supreme Court.").

As to Rule 11(e), we begin by recognizing that the history of plea bargaining is quite limited. As the Supreme Court noted in 1977,

> [o]nly recently has plea bargaining become a visible practice accepted as a legitimate component in the administration of criminal justice. For decades it was a sub rosa process shrouded in secrecy and deliberately concealed by participating defendants, defense lawyers, prosecutors, and even judges. Indeed, it was not until our decision in *Santobello v. New York*, 404 U.S. 257 (1971), that lingering doubts about the legitimacy of the practice were finally dispelled.

*Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (footnote omitted). During the relatively short history of the era of Supreme Court-sanctioned plea bargaining, this court has not been able to locate a single case indicating that the general grant of jurisdiction over criminal cases set out in 18 U.S.C. § 3231 empowers a district court to, post-judgment, set aside a knowing and voluntary guilty plea for any reason it should choose.[19] This dearth of authority stands in stark contrast to ample precedent addressing a district court's power to set aside convictions obtained following a jury trial. Federal Rule of Criminal Procedure 33 allows a district court to vacate any judgment and grant a new trial "[u]pon the defendant's

[19]For that matter, this court has not discovered any precedents suggesting a district court has unlimited power of unlimited duration to modify a criminal judgment until that judgment is satisfied. Instead, the precedents appear to indicate the grant of jurisdiction set out in 18 U.S.C. § 3231 conforms with historical norms of judicial power. *See United States v. Williams*, 790 F.3d 1059, 1069-70 (10th Cir. 2015) (cataloging the narrow and specific inherent powers held by federal courts).

motion."[20]  The Supreme Court has noted that, as a general matter, the provisions

of Rule 33 are a codification of the common law.  *United States v. Smith*, 331

U.S. 469, 473 (1947) ("Generally speaking, the power of a court over its

judgments at common law expired with the term of Court.  There was, however, a

three-day limitation on the right to move for a new trial.  Rule 33 . . . extended

that period to five days, and otherwise extended the time in which to move for

new trial because of newly-discovered evidence.  The limitation by expiration of

the term was repealed by Rule 45(c)." (citations omitted)).[21]  The absence of a

---

[20]The provisions of Rule 33 do not apply to convictions obtained by guilty plea.  *United States v. Lambert*, 603 F.2d 808, 809 (10th Cir. 1979).

[21]The Court's decision in *Smith* likewise makes clear that federal courts did not at common law have continuing jurisdiction over criminal cases.  Instead, that jurisdiction was, at a minimum, limited by the term rule.  Furthermore, it appears this aspect of *Smith* has survived the Supreme Court's *Eberhart-Kontrick-Bowles* line of cases.  In *Eberhart*, the Court declined to overrule *Smith*, reasoning as follows:

> In *Smith*, the District Judge rejected a Rule 33 motion for a new trial, and the conviction was affirmed on appeal.  After the defendant was taken into custody, the District Judge changed his mind.  Purporting to act under the authority of Rule 33, he issued an order vacating his earlier judgment and granting a new trial.  Although we observed in a footnote that "[t]he policy of the Rules was not to extend power indefinitely but to confine it within constant time periods," that observation hardly transforms the Rules into the keys to the kingdom of subject-matter jurisdiction.  Rather, as we emphasized in the text, the District Judge could not use Rule 33 to sidestep a pre-existing basic principle of judicial process—that once a final judgment is issued and the court of appeals considers a case, a district court has no power to act on it further.  This was a consequence, however, not of the Rule, but of the Rule's failure to

(continued...)

historically recognized power on the part of district courts to set aside judgments

based on guilty pleas supports the conclusion that Rule 11(e) is jurisdictional.

Treating Rule 11(e) as jurisdictional also comports with the heightened

interest in finality that attaches to criminal judgments founded upon guilty pleas.

*See United States v. Timmreck*, 441 U.S. 780, 784 (1979).  Guilty pleas "which

usually rest, after all, on a defendant's profession of guilt in open court, . . . are

indispensable in the operation of the modern criminal justice system."  *United*

*States v. Dominguez Benitez*, 542 U.S. 74, 82-83 (2004).

> Every inroad on the concept of finality undermines confidence in the
> integrity of our procedures; and, by increasing the volume of judicial
> work, inevitably delays and impairs the orderly administration of
> justice.  The impact is greatest when new grounds for setting aside
> guilty pleas are approved because the vast majority of criminal
> convictions result from such pleas.  Moreover, the concern that
> unfair procedures may have resulted in the conviction of an innocent
> defendant is only rarely raised by a petition to set aside a guilty plea.

*Timmreck*, 441 U.S. at 784 (quotation omitted).

If the district courts really possess inherent power, pursuant to 18 U.S.C.

§ 3231, to set aside guilty pleas at any time and for any reason, it certainly

appears this court is not empowered to reconstrue such requests as mislabeled

---

[21](...continued)
alter prior law.  *Smith* does not address the effect of untimely
arguments in support of a motion for new trial when, as here, the
district court is still considering post-trial motions and the case has
not yet been appealed.

*Eberhart v. United States*, 546 U.S. 12, 16-17 (2005) (citations omitted).

§ 2255 motions. *But see Gonzalez v. Crosby*, 545 U.S. 524, 530-32 (2005) (noting that any filing, no matter how denominated, that presents a "claim" for relief from a criminal judgment "is, if not in substance, a 'habeas corpus application,' or at least similar enough that failing to subject it to" the provisions of the Antiterrorism and Effective Death Penalty Act would be at odds with the purposes of that law). Treating Rule 11(e) as jurisdictional gives meaning to the limitations on repetitive collateral attacks on criminal judgments set out in the AEDPA. *See United States v. Williams*, 790 F.3d 1059, 1067-69 (10th Cir. 2015) (holding that a post-judgment motion to withdraw a guilty plea was, in reality, a second or successive § 2255 motion). The analytical approach advocated by the dissent, on the other hand, completely eliminates the concept of finality with regard to guilty pleas until the sentence is wholly discharged. That is, under the dissent's reading of § 3231 as an unlimited grant of jurisdiction, a district court can grant a motion to withdraw a guilty plea, or do so sua sponte, at any point up to the last minute of a criminal defendant's term of supervised release. *But see McGaughy*, 670 F.3d at 1158 (holding that the very purpose of § 3582 was to cabin the inherent authority of federal courts to alter previously imposed sentences to a narrow time frame and narrow set of circumstances); *Timmreck*, 441 U.S. at 784 (noting heightened interest in finality in the context of guilty pleas). We simply cannot conclude that the Supreme Court's *Eberhart-Kontrick-Bowles* line of cases was intended to cause such a far-reaching and unexpected

-32-

change in the law. Instead, as did this court in *McGaughy* with regard to Rule 35, we conclude "[a] jurisdictional conception of [Rule 11(e)'s limitations] comports with the Rule's purposes." 670 F.3d at 1158.

A textual, contextual, and historical analysis demonstrates that the provisions of Rule 11(e), which implement the statutory directive contained in § 3582(c), are jurisdictional.

## 2. Rule 11(e) is Implicated in this Case

Spaulding argues the actions of the district court did not implicate Rule 11(e) for two reasons: (1) the district court ordered that Spaulding's motion to withdraw his guilty plea be granted nunc pro tunc to the day before sentencing took place; and (2) his motion to withdraw was, in reality, a mislabeled § 2255 motion. This court can reject these contentions in short order. We have specifically held that "[a] lack of jurisdiction cannot be corrected by an order *nunc pro tunc*." *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001). Instead, "the only proper office of a *nunc pro tunc* order is to correct a mistake in the records; it cannot be used to rewrite history." *Id.* (quotation omitted).[22] Nor is Spaulding correct in asserting this court should construe his motion to withdraw his guilty plea as a mislabeled § 2255 motion. At no point was the government

---

[22]In support of his nunc-pro-tunc argument, Spaulding cites a single case. Spaulding Supp. Brief at 6 (citing *United States v. Pierce*, No. 14-13094, 2014 WL 4197350, at *4 (E.D. Mich. Aug. 22, 2014)). *Pierce*, however, involves a motion for collateral relief with a clear jurisdictional basis in 28 U.S.C. § 2255.

put on notice Spaulding was attempting to proceed under § 2255. Nor was the government given a chance to respond to the motion. In these circumstances it would work an obvious injustice to reconstrue Spaulding's motion at this late date in the litigation.[23]

### 3. Remand is Appropriate

Both parties agree that if the district court lacked jurisdiction to allow Spaulding to withdraw the guilty plea underlying the December 6, 2012, judgment, all subsequently issued orders are void. Both parties further agree that the appropriate course of action is to remand the matter to the district court to vacate all subsequent orders and reinstate the judgment entered on December 6, 2012. At that time, Spaulding can file a new appeal challenging that judgment. In light of this court's conclusion that the intent of § 3582 and Rule 11(e) was to deprive district courts of jurisdiction in just this type of case, we agree that the appropriate course here is the one advocated by the parties.

---

[23]In any event, the record in this case makes clear Spaulding has not demonstrated an entitlement to relief under § 2255. The basis of his claim for relief is that if he would have known the district court would not accept the government's sentencing recommendation, he would not have pleaded guilty. Even under the more forgiving standard applicable on direct appeal, however, a defendant's dissatisfaction with the length of his sentence is insufficient reason to allow withdrawal of a guilty plea. *United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991).

## IV.  CONCLUSION

This matter is hereby **REMANDED** to the district court with specific instructions to reinstate the judgment entered on December 6, 2012, and to vacate all orders entered subsequent thereto.

No. 13-1376, *United States v. Spaulding*

**GORSUCH**, Circuit Judge, dissenting.

Say a criminal defendant enters an involuntary guilty plea. Maybe because of improper threats. Or maybe thanks to unlawful inducements. After sentencing, he seeks to withdraw the involuntary plea without the necessity of a full appeal or a collateral lawsuit. Seeing the problem with the plea, the government agrees and joins the defendant's request. Can the district court grant the uncontested motion? Or must it grind on and gift the parties additional months and maybe years of needless judicial process to arrive at a result everyone admits the law requires? All while, most likely, the defendant sits in prison?

As my colleagues see it, Rule 11(e) and § 3582(c) require the district court to grind on. In their view, these provisions forbid the district court from undoing a guilty plea after sentencing — no matter how unlawful it may be, no matter if everyone concedes its illegality, no matter the matter at all. These provisions are jurisdictional, they reason, and must be enforced always and everywhere: if the district court fails to enforce them this court has a duty to do so. Of course, my colleagues take no pleasure in reaching their result: it is simply one they believe the law compels. My colleagues, too, offer a very thoughtful and persuasive opinion in support of their conclusion.

Respectfully, though, I do not believe the law is quite as unforgiving as they suggest. In case after case over the last decade, the Supreme Court has cautioned us that not every rule or statute qualifies as a "jurisdictional"

requirement that courts must enforce *sua sponte*; most instead impose only claim-processing procedures that are subject to traditional defenses like waiver and forfeiture. *See, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). In my view, this decade of guidance shows why Rule 11(e) and § 3582(c) belong in the claim-processing camp and why there is no lawful impediment to the parties and district court agreeing to withdraw a guilty plea everyone knows to be unlawful. To be sure, the facts of Mr. Spaulding's case aren't quite as troubling as those I've posited above: it's pretty apparent the district court in this case agreed to withdraw the guilty plea because of objections to the sentence it yielded, not problems in the plea itself, a result the government doesn't appeal now and didn't contest in writing in the district court. But make no mistake, the jurisdictional rule today's opinion creates from the cloth of Rule 11(e) and § 3582(c) covers the one scenario as well as the other, for the court holds that a district court may *never* undo a guilty plea after sentencing — no matter what.

To understand the jurisdictional question in this case, you first have to understand 18 U.S.C. § 3231. There and long ago Congress gave the federal district courts "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." Pub. L. No. 80-772, 62 Stat. 683, 826 (1948) (codified at 18 U.S.C. § 3231). This general grant of jurisdiction is unqualified: it does not end after sentencing or any other artificial period of time. Indeed, "[t]he jurisdiction of a court is not exhausted by the rendition of its

-2-

judgment, but continues until that judgment is satisfied." *Field v. United States*, 193 F.2d 86, 90 (2d Cir. 1951) (Reed, J.) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 23 (1825)).[1]  Neither can this much come as a surprise:  district courts every day exercise post-judgment jurisdiction.  In the civil context, they afford relief from a final judgment if someone can demonstrate it was procured by fraud or the like.  *See* Fed. R. Civ. P. 60(b).  In the criminal context, they may "vacate any judgment and grant a new trial" up to three years after the verdict for similar reasons — or even many years later if the parties decline to invoke the applicable rule's (nonjurisdictional) time limits.  *See* Fed. R. Crim. P. 33; *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) (holding that Rule 33's time limits are not jurisdictional).  All this is a matter of routine.

Neither, of course, do the rules of procedure that anticipate these post-judgment activities — Rule 60(b) in the civil law and Rule 33 in the criminal law — themselves *confer* jurisdiction.  They are but rules adopted by the Supreme Court pursuant to the Rules Enabling Act, a statute that only allows the Court to "prescribe general rules of practice and procedure" for the district courts.  28 U.S.C. § 2072.  Indeed, the Court has expressly recognized that the Rules Enabling Act does not bestow on it the power "to extend or restrict jurisdiction

---

[1]     The majority notes that "the power of a court over its judgments at common law expired with the term of Court."  *Ante* at 30 (quoting *United States v. Smith*, 331 U.S. 469, 473 (1947)).  But Congress abolished formal terms for district courts over half a century ago.  Pub. L. No. 88-139, 77 Stat. 248 (1963).

conferred by [another] statute." *Willy v. Coastal Corp.*, 503 U.S. 131, 135 (1992) (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 10 (1941)). So it is that a district court considering motions under Rule 60(b) and Rule 33 must be exercising "some reservoir of jurisdiction — distinct from the rules of criminal [or civil] procedure." *United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006). And when it comes to Rule 33 and the criminal law that reservoir is § 3231.

To suggest that the district court lacked jurisdiction to allow Mr. Spaulding's plea withdrawal, then, my colleagues must find some source of law withdrawing § 3231's otherwise general grant of jurisdiction. What reservoir Congress fills, it may of course drain away. But in searching for legislative authority that does so much work, we must be careful about mistaking even "important," "mandatory," and "emphatic" claim-processing rules for true jurisdictional limitations. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015). The Court has instructed that we should read legislation as "cabin[ing] a court's power" — its jurisdiction — "only if Congress has clearly stated as much. Absent such a clear statement, courts should treat the restriction as nonjurisdictional. That does not mean Congress must incant magic words. But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* (citations, alterations, internal quotation marks, and brackets omitted).

As its first candidate for a jurisdictional barrier to Mr. Spaulding's plea withdrawal in this case, my colleagues point to Federal Rule of Criminal Procedure 11(e). The terms of that rule are clear enough: "After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." No one doubts that the rule is important or mandatory, and I don't question that the district court must observe the rule when it's invoked. Indeed, most guilty plea challenges arise on direct appeal or collateral review precisely because the rule is invoked or everyone is sure it will be. But just like Rule 60(b) and Rule 33, Rule 11(e) is a waivable claim-processing rule. Just like them it was promulgated pursuant to the Rules Enabling Act. And just like them it cannot withdraw the post-judgment jurisdiction of the district court conferred by another statute, here § 3231. *See Willy*, 503 U.S. at 135.

Of course, Congress sometimes chooses to adopt independent statutes that imbue an otherwise waivable claim-processing rule with jurisdictional force. So, for example, this court has recognized that a time limit in Rule 8002 of the Federal Rules of Bankruptcy Procedure is jurisdictional because a federal statute explicitly directs that certain appeals "be taken . . . in the time provided by Rule 8002 of the Bankruptcy Rules." 28 U.S.C. § 158(c)(2); *see In re Latture*, 605 F.3d 830, 836-37 (10th Cir. 2010). But I can find no independent statute

endowing Rule 11(e) with jurisdictional force — and my colleagues point to none.[2]

That leaves my colleagues' second candidate for a possible jurisdictional barrier: 18 U.S.C. § 3582(c). Under that statute, a district court "may not modify a term of imprisonment once it has been imposed," except in limited circumstances not applicable to Mr. Spaulding's case. Here again I do not doubt the statutory command is important and mandatory and must be observed when asserted. But using traditional tools of statutory interpretation, it's equally clear to me that § 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule.

---

[2] My colleagues suggest that the Supreme Court's "insistence that only those procedural rules implementing a statutory directive can be jurisdictional" might be disregarded because it is inconsistent with some of the Court's own precedents. *Ante* at 18 n.9. To prove their point, they cite *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). According to my colleagues, *Nova Scotia* determined that "Federal Rule of Criminal Procedure 52(a) obligates a federal court to disregard errors that do 'not affect substantial rights,' *even if the government does not insist on the application of such a rule*." *Ante* at 18 n.9 (emphasis added). But, respectfully, *Nova Scotia* says no such thing: it was not answering, and did not purport to answer, whether Rule 52 is a jurisdictional limitation on the district court's authority that a court of appeals must observe *sua sponte* when no one's invoked it at any point in the proceedings in that court or this one. Instead, *Nova Scotia* held simply that Rule 52 is "as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions." 487 U.S. at 255. If to say as much is to say Rule 52 is jurisdictional, then it is to say *every* statute is jurisdictional. And we know that's not the case. *See Kontrick*, 540 U.S. at 455.

The trouble starts in the statute's text. As its object § 3582(c) speaks only to the treatment of "sentences," and even then only to the treatment of a certain class of sentences: those involving a "term of imprisonment." Nowhere do the nouns "plea" or "guilty plea" appear. Yet we know Congress well understands the difference between sentences and pleas for it distinguishes between the two all the time. *See, e.g.*, 18 U.S.C. § 3593(a) (discussing a "*plea* of guilty" in cases involving a potential "*sentence* of death" (emphasis added)); *id.* § 3771(d)(5) (listing circumstances in which a victim may move "to reopen a plea *or* sentence" (emphasis added)). Then there's trouble with the verb too. The statute forbids district courts from "modify[ing]" sentences. And often enough that verb denotes a modest change or alteration, not a complete withdrawal or about-face. *See, e.g.*, *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225 (1994); 9 Oxford English Dictionary 952 (2d ed. 1991) (defining "modify" as "[t]o alter in the direction of moderation or lenity" or "[t]o make partial changes in; to change (an object) in respect of some of its qualities"). Now, I readily acknowledge a plausible counter-argument here. If § 3582(c) prevents courts from "modify[ing] a term of imprisonment," you could argue that a court shouldn't be able to vacate a plea on which that sentence depends. In holding that § 3582(c) applies to Mr. Spaulding's case, my colleagues at least implicitly adopt this view. But the plain terms of the statute do not include a clear statement stripping the district court of jurisdiction to accept a motion seeking to withdraw

-7-

a guilty plea. And a clear statement is what we need. *Kwai Fun Wong*, 135 S. Ct. at 1632.

Neither is that the end of it, for the trouble that started with the text grows exuberantly when you recall Rule 33. In statutory interpretation it's always our hope to fit the relevant statutes and rules together "into a harmonious whole" and render none nugatory. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). But the jurisdictional gloss my colleagues give § 3582(c) all but leaves Rule 33 for dead. It does because, if § 3582(c) really stretched beyond preventing sentence modifications to preclude district courts from taking *any action* with the knock-on effect of undoing a sentence, then district courts could *never* grant a Rule 33 motion undoing a criminal judgment if the defendant's sentence included a term of imprisonment. And in federal court almost every criminal trial resulting in a conviction yields a term of imprisonment. *See, e.g.*, United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2014, Tenth Circuit* tbl. 4 (around 90% of convicted federal defendants receive prison time). Coming at the point from the other direction, if § 3231's grant of jurisdiction *didn't* live on beyond a final judgment a district court decision granting a post-trial motion to vacate a judgment under Rule 33 would be almost always *ultra vires*. Far from creating a harmonious whole, reading § 3582(c) as

jurisdictional introduces a seriously discordant note into our law by suggesting Rule 33 just doesn't mean what it says.[3]

Broadening our view beyond subsection (c) and Rule 33 to take in § 3582's other subsections further supports the conclusion that the statute isn't jurisdictional. The section as a whole answers questions related to the claim-processing mechanics of imposing a sentence of imprisonment, not the jurisdiction of the court. Subsection (a), for example, sets forth the factors a court must consider when deciding whether to sentence a defendant to prison, while subsection (d) allows a judge to bar a defendant sentenced to prison for certain racketeering and drug charges from contacting criminal confederates. It's hard to imagine that — tossed in among these provisions governing the finer points of sentencing — we would find one single subsection depriving the district court of jurisdiction.

---

[3] The majority responds to this harmony point with one of its own, claiming a nonjurisdictional reading of Rule 11(e) undermines AEDPA's procedural hurdles for "second or successive" motions for collateral relief. *See ante* at 32 (discussing 28 U.S.C. § 2255(h)). But Mr. Spaulding moved to withdraw his plea the day after sentencing and before ever filing a § 2255 motion, so no one could plausibly argue that his motion was a second or successive *anything*. Despite my colleagues' suggestion, then, this case simply does not implicate our practice of construing motions that follow an earlier collateral attack as arising under § 2255. Indeed, we have expressly warned district courts *against* following that practice when it comes to a first request for post-judgment relief. *See United States v. Torres*, 282 F.3d 1241, 1245 (10th Cir. 2002). I am thus unable to see the majority's perceived tension — and without that tension, there's no need to adopt its creative jurisdictional solution.

An even broader view still — of Title 18 as a whole — continues to point in the same direction. Chapter 211 of Title 18 is helpfully entitled "Jurisdiction and Venue." That's where you'll find § 3231, the general grant of criminal jurisdiction discussed above. Meanwhile, § 3582 lives several doors down in Chapter 227, a chapter entitled "Sentences" (in Subchapter D, entitled "Imprisonment"). Neither was this arrangement manufactured by some bureaucratic commission compiling the U.S. Code: Congress itself enacted it. *See* Pub. L. No. 98-473, 98 Stat. 1837, 1998 (1984); Pub. L. No. 80-772, 62 Stat. 683, 826 (1948). And the Supreme Court has previously "found Congress's decision to locate a statute 'separate' from jurisdictional provisions suggestive contextual evidence that the statute in question was non-jurisdictional." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1158 (10th Cir. 2013) (Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). Section 3582's location in Title 18 suggests just that.

Yet one more structural point is worth taking in. Reading the Federal Rules and Title 18 together, we can see a comprehensive scheme regulating pleas, sentences, and judgments. Rule 11 governs pleas. Chapter 227(C) of Title 18 governs the imposition of fines. And Chapter 227(D), where § 3582 is found, governs sentences of imprisonment. Here again it seems unlikely that Congress would elevate only the very last little portion of this regime to the jurisdictional plane, leaving all others as claim-processing rules. And putting this interpretive

-10-

clue together with all the rest, I just cannot see how I might fairly say Congress "plainly" endowed § 3582(c)'s procedural bar with jurisdictional consequences.[4]

Of course, precedent sometimes compels us to reach results that seem doubtful on first impression. But looking to the case law in this area I see nothing that commands us to treat Rule 11 or § 3582(c) as jurisdictional limits on the district court's authority. Indeed, at least one other circuit has expressly held that § 3582(c) is not jurisdictional. *See United States v. Taylor*, 778 F.3d 667, 669-71 (7th Cir. 2015). Another court, although reserving judgment on the issue, has similarly suggested that recent Supreme Court precedent "calls into question a jurisdictional reading of § 3582." *United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006). True, and as the Seventh Circuit's opinion in *Taylor* points out, some other courts have spoken of the statute in jurisdictional terms. *See* 778 F.3d at 670 (collecting cases). But these cases do not confront all of the relevant

---

[4]    As my colleagues point out, § 3582(c) does direct its command to the court, not the parties: "*The court* may not modify a term of imprisonment once it has been imposed . . . ." (emphasis added). And my colleagues are of course right that whether a statute's instructions are aimed at the court or the parties is a relevant consideration when weighing whether it has jurisdictional effect. *See Hobby Lobby*, 723 F.3d at 1157-58 (Gorsuch, J., concurring). But neither is this clue dispositive. In *Dolan v. United States*, 571 F.3d 1022 (10th Cir. 2009), *aff'd*, 560 U.S. 605 (2010), for example, this court and the Supreme Court recognized that a victims' restitution statute addressing its provisions to the court was not jurisdictional in light of the remaining interpretive evidence. The same is true here: while the statute undoubtedly addresses the courts, not the parties, too many other textual, structural, and contextual clues conspire to foreclose a conclusion that the statute is "plainly" jurisdictional.

-11-

textual evidence I've noted here and no precedent in this circuit obligates this court today to join their side of the circuit split. In response, my colleagues do claim some measure of support from *United States v. McGaughy*, 670 F.3d 1149 (10th Cir. 2012). Yet that decision held jurisdictional only Rule 35(a)'s fourteen-day deadline, and no one before us claims that rule applies to this case. In the process of reaching its result, it's true that *McGaughy* did speak in passing about § 3582(c) and seemed to proceed on the premise that it's jurisdictional, but not even my colleagues suggest it rendered a binding holding that the statute (or Rule 11(e)) qualifies as jurisdictional.[5]

After addressing text and precedent, my colleagues conclude their opinion with an appeal to policy. They contend that affording Rule 11(e) and § 3582(c) a jurisdictional reading and denying the ability of a district court to undo a guilty plea, even on the parties' stipulated motion, "comports with the heightened interest in finality that attaches to criminal judgments founded upon guilty pleas."

---

[5] In *Taylor*, the Seventh Circuit suggested that this court's decision in *United States v. Graham*, 704 F.3d 1275 (10th Cir. 2013), held § 3582(c) jurisdictional. But my colleagues mention *Graham* only in passing and for good reason. That ruling did not consider whether § 3582(c) withdraws § 3231's general grant of jurisdiction, instead asking whether that statute *confers* some power on the district court. To be sure, *Graham* suggested that "[f]ederal courts generally lack jurisdiction to modify a term of imprisonment once it has been imposed." 704 F.3d at 1277. But as my colleagues seem to agree, that wording is best understood not to implicate the court's "jurisdiction" in the true and precise sense, as explained by *Kontrick*. After all, the case on which *Graham* relies for the proposition doesn't discuss jurisdiction at all. *See Dillon v. United States*, 560 U.S. 817 (2010).

-12-

*Ante* at 31.  An interest that stems, my colleagues seem to suggest, from the fact that plea bargaining and guilty pleas are both reliable and widespread.  *Id.* (noting, among other things, that guilty pleas "rest, after all, on a defendant's profession of guilt" (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82-83 (2004))).

This policy appeal too seems to me a doubtful substitute for a clear statutory statement withdrawing the district court's longstanding post-judgment jurisdiction.  In the first place, statutes and rules are the product of many competing interests and compromised objectives and the best guide to the "policy" they seek to vindicate is their terms and structure, not our supplemental conjuring.  If Congress wants to withdraw district court jurisdiction in this or any other area of course it may, but it is not our business to substitute its judgment for ours based on our own views of optimal policy.  *See, e.g.*, *In re Dawes*, 652 F.3d 1236, 1243 (10th Cir. 2011) ("[D]eparting from a precise statutory text may do no more than disturb a carefully wrought legislative compromise." (quoting John F. Manning, *Textualism and the Equity of the Statute*, 101 Colum. L. Rev. 1, 18 (2001))).

Neither am I persuaded by my colleagues' claimed policy interest even taken on its own terms.  My colleagues contend for a heightened finality interest in guilty pleas in part because of their supposed reliability.  But by now it's surely well known that structural features of the plea bargaining process can lead

innocent defendants to take the same deals as guilty ones. And I can think of no reason to suggest a heightened confidence in plea bargaining when compared to its alternative: the trial. It is at trial, after all, where the prosecution's case is put to the test, the defendant is guaranteed so many procedural protections, and a jury must unanimously decide. When it comes to the confidence we bear in a conviction and the repose to which it is entitled, I would have thought the trial guaranteed by the Constitution qualifies as at least the equal of the plea bargain that has evolved in its shadow. *See* Robert E. Scott & William J. Stuntz, *Plea Bargaining As Contract*, 101 Yale L.J. 1909, 1911 (1992); Stephanos Bibas, *Plea Bargaining in the Shadow of Trial*, 117 Harv. L. Rev. 2463 (2004); William J. Stuntz, *Plea Bargaining and Criminal Law's Disappearing Shadow*, 117 Harv. L. Rev. 2548 (2004).

Finally and relatedly, the majority's worry that my reading of Rule 11(e) and § 3582(c) would "eliminate[] the concept of finality with regard to guilty pleas" seems to me much overblown. *Ante* at 32. Under my reading of the relevant rules and statutes, the government need merely assert its rights under Rule 11(e) and the guilty plea will stand and finality will be preserved. Even if the government fails to assert a Rule 11(e) objection, a district court might *still* be able to enforce the rule on its own motion if it disagrees with the parties' arguments. *See United States v. Mitchell*, 518 F.3d 740, 750 (10th Cir. 2008) (suggesting that courts may raise certain claim-processing rules *sua sponte*). It is

-14-

only in the (surely exceedingly) few cases where no one disputes the plea's illegality that a plea may be undone without engaging the great grinding gears of an appeal or collateral lawsuit. Nothing about this arrangement should come as a surprise either for, after all, "[o]urs is an adversarial system of justice" in which the parties are usually "presum[ed] . . . responsible for raising their own defenses." *Id.* at 749. Congress may of course override this presumption anytime it wishes and elevate a claim-processing defense into a jurisdictional limitation. But that remains its job to do, not ours.

I respectfully dissent.